

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-15-00085-CV

_____

IN THE INTEREST OF E.R.C., A MINOR CHILD

On Appeal from the 200th District Court
Travis County, Texas
Trial Court No. D-1-FM-10-003078

Before Morriss, C.J., Moseley and Burgess, JJ.
Opinion by Justice Moseley

O P I N I O N

After a contentious litigation culminating with a bench trial, a Travis County district judge[1] granted Christopher Corsbie's motion to modify the parent-child relationship pertaining to his child, E.R.C., a girl born on December 25, 2009. The order named Corsbie and the child's mother, Brandi Stokes,[2] as joint managing conservators. In its order,[3] the trial court granted Corsbie exclusive rights, *inter alia*, to designate the primary residence of the child, to consent to medical, dental, surgical, and psychological treatment, and to make decisions concerning the child's education. In addition, the trial court ordered Stokes to pay Corsbie $350.00 per month in child support and to pay Corsbie's attorney $40,000.00 in attorney fees. Stokes has appealed, contending (1) that the order of the Honorable James Carroll (who heard Stokes' motion to recuse the trial judge) denying her motion to recuse[4] the trial judge, the Honorable Tim Sulak, violated her rights to due process and religious liberty under the federal constitution and violated Rule 18b

---

[1]Originally appealed to the Third Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2013). We are unaware of any conflict between precedent of the Third Court of Appeals and that of this Court on any relevant issue. *See* TEX. R. APP. P. 41.3.

[2]Stokes, a licensed attorney, represented herself at trial and on appeal.

[3]Although the order is styled "Order in Suit to Modify Parent-Child Relationship" and the motion to modify refers to a final order rendered on or about May 9, 2011, we have reviewed the clerk's record filed in this case and have found that no final order from on or about May 9, 2011, has been filed. We also confirmed with the Travis County District Clerk that no such final order has been filed in the district court's file. Therefore, we will treat the trial court's order in this appeal as an original final order in a suit affecting the parent-child relationship.

[4]In the trial court, Stokes filed a motion to disqualify or to recuse Judge Sulak, asserting grounds under both Rule 18b(a) of the Texas Rules of Civil Procedure (which requires a judge to disqualify himself in certain situations) and under Rule 18b(b) (which requires a judge to recuse himself in certain other circumstances). *See* TEX. R. CIV. P. 18b(a), (b). On appeal, Stokes only challenges the denial of the motion to recuse under Rule 18b(b).

2

of the Texas Rules of Civil Procedure, (2) that Travis County District Court Local Rule 1.3[5] (Local Rule 1.3) violates the due process requirements of the United States Constitution, (3) that the reappointment of the Travis County Domestic Relations Office (DRO) as the guardian ad litem of E.R.C.[6] violated Stokes' right to due process under the United States Constitution, and (4) that the cumulative effect of the errors by the trial court violated her right to due process under the United States Constitution, or otherwise constituted harmful error. We find that (1) Stokes has not preserved her alleged due process violations regarding the refusal to recuse and Local Rule 1.3, (2) that she has waived any complaint that the order refusing the motion for recusal violated her religious liberties and that cumulative error violated her right to due process, (3) that any error regarding the reappointment of the DRO as guardian ad litem is moot, (4) that Judge Carroll did not abuse his discretion in denying Stokes' motion to recuse Judge Sulak, and (5) that Stokes has not shown reversible cumulative error by the trial court.

We affirm the judgment of the trial court.

## I.      Alleged Due Process Violations Regarding the Identity of Trial Judge Not Preserved

"Preservation of error is a systemic requirement on appeal. . . . Ordinarily, a court of appeals should review preservation of error on its own motion." *Ford v. State*, 305 S.W.3d 530, 532–33 (Tex. Crim. App. 2009) (citations omitted). We should not address the merits of an issue if it has not been preserved for appeal. *Id.* To preserve a complaint for our review, a party must

---

[5]*See* TRAVIS (TEX.) CIV. DIST. CT. LOC. R. 1.3.

[6]The DRO was originally appointed guardian ad litem on September 27, 2013, after Stokes filed a motion to modify the parent-child relationship. After Stokes nonsuited her motion in October 2013, Corsbie filed a motion to modify the parent-child relationship, and the DRO was re-appointed guardian ad litem on February 2, 2015.

first present to the trial court a timely request, objection, or motion stating the specific grounds for the desired ruling if those are not apparent from the context. TEX. R. APP. P. 33.1(a)(1). Further, the trial court must either have ruled on the request, objection, or motion, either expressly or implicitly, or the complaining party must have objected to the trial court's refusal to rule. TEX. R. APP. P. 33.1(a)(2). This preservation rule applies to due process challenges under the federal constitution. *See Low v. Henry*, 221 S.W.3d 609, 619 (Tex. 2007); *In re L.M.I.*, 119 S.W.3d 707, 710–11 (Tex. 2003); *Diaz v. State*, No. 03-15-00539-CR, 2016 WL 1084398, at *3 (Tex. App.—Austin Mar. 17, 2016, no pet. h.) (mem. op.).

In her first point of error, Stokes asserts that Judge Carroll's denial of her motion to recuse Judge Sulak violated her rights to due process and religious liberty and violated Rule 18b of the Texas Rules of Civil Procedure. However, although the motion she filed to recuse Judge Sulak asserts grounds under Rule 18b, that motion does not mention an allegation that she suffered a violation of due process. Further, even though Stokes made a single passing reference to her due process rights in her opening statement at the hearing conducted on her motion to recuse Judge Sulak,[7] during the remainder of the hearing, Stokes focused on the requirements for recusal under Rule 18b, and Stokes never again argued to Judge Carroll that a denial of her motion would be a violation of her right to due process. It was not apparent from the record that Stokes was asserting that Judge Sulak's failure to voluntarily recuse himself resulted in a denial of due process or that

---

[7]Stokes stated that "this case will eventually be heard by a court that still cares about my First Amendment right to religious freedom and my due process rights."

a denial of her motion would be a denial of due process. Therefore, Stokes failed to preserve her due process argument for appeal. *See L.M.I.*, 119 S.W.3d at 711.

In her second point of error, Stokes complains that Local Rule 1.3 unconstitutionally violates due process by creating an increased risk of judicial bias by reducing judicial accountability, allowing judicial case shopping, and denying litigants fair notice of judicial case assignments.[8] However, Stokes neither lodged any objection at the trial level complaining of the assignment of judges pursuant to Local Rule 1.3 nor made any complaint that Local Rule 1.3 was unconstitutional. In addition, her amended motion for new trial does not complain of Local Rule 1.3 or the assignment of judges pursuant to it. Further, at the hearing on her motion for new trial, Stokes made three general references to the local rules, but each of those were in the context of her complaints regarding the guardian ad litem or regarding the court-appointed psychologist, not as those rules pertained to the assignment of judges. Thus, it was not apparent that Stokes was referring to Local Rule 1.3 as it related to the assignment of a judge to hear her case or that she was asserting that it violated due process. Therefore, Stokes has preserved nothing for our review in regard to Local Rule 1.3, and we overrule her second point of error.

---

[8]Local Rule 1.3 provides:

> The District Clerk will file cases by distributing them equally, on a rotating basis, among the District Courts. However, hearings are assigned to available judges without regard to the court in which the case is filed. For all matters, therefore, the District Court identified in the style of the case does *not* mean the judge of that court will conduct the hearing. Unless a case is specially assigned to a particular judge, pursuant to these rules, each hearing in a case may be heard by any judge. For non-jury cases on the Short Central Docket, the Court Administrator assigns the hearing to available judges. For all other matters, the judge calling the docket assigns the hearings.

TRAVIS (TEX.) CIV. DIST. CT. LOC. R. 1.3.

**II.** **Alleged Violation of Stokes' Religious Liberty and Violation of Due Process by Cumulative Error Waived**

As noted above, included in Stokes' first point of error is her assertion that her religious liberty was violated by the denial of her motion to disqualify or recuse Judge Sulak. In addition, she asserts that cumulative error by the trial court violated her right to due process. Our appellate rules require that the appellant's brief "contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX. R. APP. P. 38.1(i); *Thomas v. Graham Mortg. Corp.*, 408 S.W.3d 581, 595 n.5 (Tex. App.—Austin 2013, pet. denied). In her brief, Stokes fails to cite any authority in support of her arguments pertaining to alleged violations of her religious liberty.[9] "[F]ailure to cite authority in support of a point of error on appeal waives the complaint." *Leyva v. Leyva*, 960 S.W.2d 732, 734 (Tex. App.—El Paso 1997, no writ); *see also Ebner v. First State Bank of Smithville*, 27 S.W.3d 287, 303 n.28 (Tex. App.—Austin 2000, pet. denied) (issue without argument or authority is waived). In addition, an appellant claiming that her constitutional rights have been violated must show how those rights have, indeed, been violated. *See Custer v. Wells Fargo Bank, N.A.*, No. 03-15-00362-CV, 2016 WL 1084165, at *3 (Tex. App.—Austin Mar. 18, 2016, no pet. h.) (mem. op.); *see Edwards Aquifer Auth. v. Day*, 369 S.W.3d 814, 844 (Tex. 2012) (refusing to consider appellant's constitutional claim when he failed to demonstrate how his constitutional rights were violated). Stokes has not demonstrated how her right to the free exercise of religion was violated by the denial of her motion to recuse, or how

---

[9]The one case cited by Stokes in support of her religious liberty argument is inapposite. *See Presbyterian Church in U.S. v. Mary Elizabeth Blue Hull Mem'l Presbyterian Church*, 393 U.S. 440, 449 (1969) (holding that "the First Amendment severely circumscribes the role that civil courts may play in resolving church property disputes").

cumulative error by the trial court violated her right to due process. Therefore, we find these arguments are waived as inadequately briefed. *See Thomas*, 408 S.W.3d at 595 n.5.

## III. Issues Regarding the Reappointment of Guardian Ad Litem Are Moot

In her third point of error, Stokes asserts that the reappointment of the DRO as guardian ad litem was a violation of her right to due process and that the court erred in reappointing the DRO without taking remedial action with regard to the alleged misconduct of its employee, Cynthia Gonzalez. In a suit affecting the parent-child relationship, the trial court may make temporary orders "for the safety and welfare of the child." TEX. FAM. CODE ANN. § 105.001 (West 2014). Among the temporary orders authorized by the Family Code is the appointment of a guardian ad litem when the trial court "finds that the appointment is necessary to ensure the determination of the best interests of the child." *In re Scheller*, 325 S.W.3d 640, 645 (Tex. 2010) (per curiam) (quoting TEX. FAM. CODE ANN. § 107.021(a)(3), (b)(2)). After the trial court enters its final order, any complaints about temporary orders become moot. *Caldwell v. Garfutt*, No. 03-14-00019-CV, 2016 WL 105920, at *4 (Tex. App.—Austin Jan. 7, 2016, no pet.); *Mauldin v. Clements*, 428 S.W.3d 247, 262 (Tex. App.—Houston [1st Dist.] 2014, no pet.). The trial court entered its final order on December 9, 2015, thereby rendering Stokes' complaint about the temporary orders moot. Since this issue is moot, nothing is presented for our review. We overrule Stokes' third point of error.

## IV. No Error in Denying the Motion to Disqualify or Recuse Judge Sulak

As previously noted, in her first point of error, Stokes asserts that Judge Carroll erred in denying her motion to disqualify or recuse Judge Sulak in violation of Rule 18b. In her motion,

Stokes alleged that Judge Sulak's recusal was required by Rule 18b, subsections (b)(1) and (b)(2). Subsections (b)(1) and (b)(2) require a judge to recuse himself in a proceeding in which his "impartiality might reasonably be questioned" or in which he "has a personal bias or prejudice concerning the subject matter or a party." TEX. R. CIV. P. 18b(b)(1), (2).

We review an order denying a motion to recuse for abuse of discretion. *Abdygapparova v. State*, 243 S.W.3d 191, 197 (Tex. App.—San Antonio 2007, pet. ref'd).[10] A trial court abuses its discretion only "if it has acted in an unreasonable or arbitrary manner, or without reference to any guiding rules and principles." *Saint v. Bledsoe*, 416 S.W.3d 98, 101–02 (Tex. App.—Texarkana 2013, no pet.) (citing *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985)). In considering whether the trial court abused its discretion, "we view the evidence in a light most favorable to the court's decision and indulge every legal presumption in favor of its judgment." *In re Marriage of Ford*, 435 S.W.3d 347, 350 (Tex. App.—Texarkana 2014, no pet.) (citing *In re J.I.Z.*, 170 S.W.3d 881, 883 (Tex. App.—Corpus Christi 2005, no pet.)).

"A party seeking recusal must satisfy a 'high threshold' before a judge must be recused." *Ex parte Ellis*, 275 S.W.3d 109, 116 (Tex. App.—Austin 2008, no pet.) (quoting *Liteky v. United States*, 510 U.S. 540, 558 (1994) (Kennedy, J., concurring).

> In determining whether a judge's impartiality might be reasonably questioned so as to require recusal, the proper inquiry is whether a reasonable member of the public at large, knowing all the facts in the public domain concerning

---

[10]Stokes urges us to use a de novo standard in reviewing all of her points of error. She bases this request on her contention that the trial court is not entitled to any deference since "the presumption of honesty and integrity in the judiciary has been rebutted in this case." However, she has cited no appropriate authority for that proposition. Further, we have found that Stokes did not carry her burden to demonstrate bias, prejudice, or partiality on the part of the trial court. Therefore, in reviewing her remaining issues, we will apply the appropriate standard of review established by the Supreme Court of Texas.

8

the judge and the case, would have a reasonable doubt that the judge is actually impartial.

*Burkett v. State*, 196 S.W.3d 892, 896 (Tex. App.—Texarkana 2006, no pet.) (citing *Kirby v. Chapman*, 917 S.W.2d 902, 908 (Tex. App.—Fort Worth 1996, no pet.). We evaluate the merits of a motion to recuse from "a disinterested observer's point of view." *Ellis*, 275 S.W.3d at 116 (quoting *Rogers v. Bradley*, 909 S.W.2d 872, 882 (Tex. 1995) (Enoch, J., concurring). A reasonable, disinterested person would be knowledgeable about the political realities of judicial elections. *Rogers v. Bradley*, 909 S.W.2d 872, 884 (Tex. 1995) (Enoch, J., concurring). These realities include the fact that those groups who are most interested endorse, campaign for, and raise money for those judges they support. *See id.* at 882.

Further, "[p]artiality, bias, and prejudice, in the context of recusal, do 'not refer to all favoritism, but only to such as is, for some reason, wrongful or inappropriate.'" *Ellis*, 275 S.W.3d at 117 (quoting *Liteky*, 510 U.S. at 550, 552). At the same time, judges "enjoy a 'presumption of impartiality.'" *Id.* (quoting *Abdygapparova*, 243 S.W.3d at 198). Further, it is well-accepted that a conscientious judge makes himself aware of any biases he may have, and thereby nullifies their effect. *Liteky v. United States*, 510 U.S. 540, 562 (1994) (Kennedy, J., concurring); *Ellis*, 275 S.W.3d at 117.

The movant's burden to prove that recusal is warranted "is only satisfied when the movant provides facts demonstrating the presence of bias or partiality 'of such a nature and extent as to deny the movant due process of law.'" *Ellis*, 275 S.W.3d at 117 (quoting *Office of Pub. Util. Counsel v. Pub. Util. Comm'n*, 185 S.W.3d 555, 574 (Tex. App.—Austin 2006, pet. denied)). "Conclusory statements, conjecture, or mere assertions of bias will not satisfy the burden or

9

overcome the presumption of impartiality." *Id.* (citing *Rogers*, 909 S.W.2d at 881, 884 (Enoch, J., concurring); *Abdygapparova*, 243 S.W.3d at 198). Further, "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 240 (Tex. 2001) (per curiam) (quoting *Liteky*, 510 U.S. at 555). Rather, it must be shown that "they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Id.* (quoting *Liteky*, 510 U.S. at 555).

Stokes argued at the recusal hearing and on appeal that Judge Sulak was biased in favor of the lesbian, gay, bisexual, and transgender (LGBT) community and against Christians. At the hearing, Stokes introduced evidence that Judge Sulak had been endorsed in his election campaign by two groups representing the LGBT community and of the endorsement procedures of one of the groups. She also introduced evidence consisting of articles written either by or about LGBT activist groups, emails to and from Corsbie, and emails to and from Stokes, none of which concerned Judge Sulak or evidenced any bias or partiality on his part. Further, no evidence was introduced regarding Judge Sulak's involvement with the LGBT community or LGBT activist groups, or of his written or oral statements concerning LGBT rights or his religious views. Stokes' speculation that Judge Sulak was biased based merely on the fact that he received endorsements from LGBT activist groups in an election campaign is not sufficient to overcome the presumption of judicial impartiality. *See Rogers*, 909 S.W.2d at 881, 884. Further, a reasonable, disinterested observer would recognize the reality that a judge participating in a political campaign may receive many endorsements from politically active groups and individuals and that at the same time, a judge is under the ethical obligation to remain impartial. *See id.* at 884.

10

The only other evidence at the hearing was Stokes' testimony concerning the allegedly erroneous rulings by Judge Sulak that she argued evidenced his bias and partiality. Our review of the record shows that Judge Sulak made rulings both in favor of and against both parties. On this record, we cannot say that his rulings demonstrate a "deep-seated favoritism or antagonism that would make fair judgment impossible." *Francis*, 46 S.W.3d at 240. Therefore, we find that Judge Carroll did not abuse his discretion in overruling Stokes' motion to recuse. We overrule Stokes' first point of error.

## V.      No Cumulative Error Shown

Stokes contends in her fourth point of error that the cumulative effect of what she characterizes as multiple erroneous rulings by the trial court resulted in harmful error and the rendition of an improper judgment. The courts call this the "cumulative error" doctrine, which recognizes that while each individual error, when analyzed separately, may be harmless, their combined effect could constitute harmful error. *See Strange v. Treasure City*, 608 S.W.2d 604, 609 (Tex. 1980); *Fibreboard Corp. v. Pool*, 813 S.W.2d 658, 695–96 (Tex. App.—Texarkana 1991, writ denied). The Austin Court of Appeals has pointed out that this doctrine "has found little favor with appellate courts." *Caro v. Sharp*, No. 03-02-00108-CV, 2003 WL 21354602, at *8 (Tex. App.—Austin June 12, 2003, pet. denied) (mem. op.) (citing *Crescendo Inves., Inc. v. Brice*, 61 S.W.3d 465, 481 & n.16 (Tex. App.—San Antonio 2001, pet. denied)). Further, if there are no errors, cumulative error issues are rejected. *Id.*; *see Owens v. State*, 96 S.W.3d 668, 673 (Tex. App.—Austin 2003, no pet.); *Pool*, 813 S.W.2d at 696. Therefore, before errors can be cumulated, they must first be shown to exist.

11

Stokes cites ten alleged errors in support of her issue. However, several of her alleged errors are not supported either by citations to the record or to authority and are waived. *Thomas*, 408 S.W.3d at 595 n.5; *Leyva*, 960 S.W.2d at 734. Therefore, we will only examine those that have not been waived by inadequate briefing.

### A. The Order Compelling Production of Psychiatric Evaluation

On July 17, 2015, three days before trial was to begin, the trial court entered an order compelling Stokes to produce the report of a psychiatric evaluation of her as performed by Dr. Brian Falls. Stokes argues that the trial court erred because the order violated (1) a prior oral discovery order ending discovery on April 15, 2015, (2) a subsequent order entered on June 3, 2015, providing that there would be no further discovery except by agreement, and (3) Texas Rule of Civil Procedure 190.3(b)(1)(A).[11]

We review the trial court's discovery orders under an abuse-of-discretion standard. *See Ford Motor Co. v. Castillo*, 279 S.W.3d 656, 661 (Tex. 2009). "A trial court abuses its discretion when it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law." *Id.*

In his motion to compel, Corsbie alleged that on May 5, 2015, the guardian ad litem recommended that Stokes submit to a forensic psychiatric evaluation with Falls and that Stokes submitted to the recommended evaluation. Corsbie also alleged in his motion and at the hearing that his counsel was unaware of the existence of the report until July 8, 2015, when Stokes advised

---

[11]Rule 190.3 provides that discovery in a case under the Family Code must be concluded thirty days before trial, unless the suit is governed by a discovery control plan under Rules 190.2 or 190.4. *See* TEX. R. CIV. P. 190.3(a), (b)(1)(A).

him of its existence but stated she would not disclose it without a court order. Stokes did not dispute these allegations.

Although discovery in family law cases generally must be concluded thirty days before trial under Rule 190.3(b)(1)(a), Rule 190.5 provides that a "court may modify a discovery control plan at any time" and that it "must allow additional discovery" when new information is disclosed "after the deadline for completion of discovery" and the party seeking discovery would be unfairly prejudiced. TEX. R. CIV. P. 190.5(a)(1), (2). In this case, Stokes did not disclose the existence of the report until less than two weeks before trial and after the discovery deadline had passed. Corsbie filed his motion to compel in response to Stokes' insistence that she would not produce the report without a court order. Under these circumstances, the trial court did not abuse its discretion in granting the motion to compel.

### B.        Admission of the Testimony, Opinion, and Report of Dr. Alissa Sherry

Stokes also complains of the admission of the expert testimony, opinion, and report of Dr. Allissa Sherry since she admitted that she does not have expertise in autism.[12] Before the admission of Sherry's report, Stokes objected to its admission and any opinion-based testimony since Sherry was not an expert on autism. Other than the area of autism, Stokes did not challenge Sherry's qualifications. The trial court overruled the objection and admitted the report.

Although Stokes informed the trial court that she had a redacted copy of the report, she did not make a record introducing her proposed copy of the report. Further, she did not identify on

---

[12]Sherry, a forensic psychologist, performed psychological evaluations on both Stokes and Corsbie pursuant to a court order in this case. After interviewing Stokes and discovering Stokes had a history of autism, she advised both parties that she did not have expertise in autism and recommended retaining Dr. Scott Hammel to conduct the autism-specific testing of Stokes, which she incorporated into her report.

13

the record what parts of the report were objectionable. If any part of a report is admissible, then an objection to the admission of such report that does not specifically identify the objectionable portion is properly overruled. *Speier v. Webster Coll.*, 616 S.W.2d 617, 619 (Tex. 1981); *Stovall & Assocs., P.C. v. Hibbs Fin. Ctr., Ltd.*, 409 S.W.3d 790, 797 (Tex. App.—Dallas 2013, no pet.). Without a specific objection on the record identifying the objectionable parts of the report, Stokes has waived any complaint regarding the admission or consideration of the report. *See Stovall & Assocs., P.C.*, 409 S.W.3d at 797.

Further, when Sherry later testified regarding Stokes' diagnosis and offered her opinions regarding her evaluation of Stokes, Stokes made no objection. To preserve a complaint for appellate review, the objecting party must either make a timely and specific objection each time the evidence or testimony is offered, or obtain a running objection. *Bay Area Healthcare Grp., Ltd. v. McShane*, 239 S.W.3d 231, 235–36 (Tex. 2007) (per curiam). Since Stokes did neither of these, she has preserved nothing for our review regarding the expert testimony and opinions of Sherry.

### C.    Testimony of the Guardian Ad Litem

Stokes next complains that the trial court should not have placed any reliance on the testimony, opinion, or reports of Gonzalez, who was appointed guardian ad litem through the DRO. She complains that because Gonzalez is not licensed as a social worker, is biased, and is unqualified, she could not give competent expert testimony. However, Stokes made no objection to Gonzalez' testimony either before or during trial. Without a timely objection, Stokes has not

14

preserved her complaint regarding Gonzalez' qualifications. *See* TEX. R. APP. P. 33.1(a)(1); *DeNucci v. Matthews*, 463 S.W.3d 200, 211 (Tex. App.—Austin 2015, no pet.).

### D. Sufficient Evidence Supported the Trial Court's Order

Stokes also asserts that there was legally insufficient evidence to support the order entered by the trial court (which named the parties joint managing conservators, provided for equal possession and access, gave Corsbie the exclusive right to determine the primary residence of E.R.C., allowed Corsbie to make educational, medical, and dental decisions for E.R.C., and ordered Stokes to pay child support to Corsbie). Specifically, Stokes argues that there is no credible testimony supporting the trial court's findings that the order was in the best interest of the child.[13]

#### 1. Standard of Review

We review each of these issues under an abuse-of-discretion standard. *Iliff v. Iliff*, 339 S.W.3d 126, 133 (Tex. App.—Austin 2009), *aff'd*, 339 S.W.3d 74 (Tex. 2011); *see Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990) (per curiam) (child support); *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982) (conservatorship, control, possession, and access). We will not disturb the trial court's order unless a clear abuse of discretion is shown. *Zeifman v. Michels*, 212 S.W.3d 582, 587 (Tex. App.—Austin 2006, pet. denied). "A trial court abuses its discretion only when it has acted in an unreasonable or arbitrary manner, or when it acts without reference to any

---

[13]Stokes also asserts that there was no credible testimony that supported a finding that there was a substantial and material change in circumstances. However, this finding is only a consideration when there is a modification to conservatorship, possession, access, or child support contained in a previous order entered in the case. *See* TEX. FAM. CODE ANN. § 156.101(a)(1) (West 2014), § 156.401(a)(1) (West Supp. 2015). As pointed out previously, there was no such existing order in the record presented to this Court.

guiding principle." *Coburn v. Moreland*, 433 S.W.3d 809, 823 (Tex. App.—Austin 2014, no pet.) (quoting *In re Marriage of Jeffries*, 144 S.W.3d 636, 638 (Tex. App.—Texarkana 2004, no pet.)). When reviewing for abuse of discretion, "legal and factual sufficiency of the evidence are not independent grounds for asserting error but are relevant factors in determining whether the trial court abused its discretion." *Id.* (citing *Zeifman*, 212 S.W.3d at 587); *In re Davis*, 30 S.W.3d 609, 614 (Tex. App.—Texarkana 2000, no pet.). In considering whether the trial court abused its discretion, we determine (1) whether there was sufficient evidence upon which to exercise its discretion and if there was, (2) whether the application of its discretion was erroneous. *Id.*; *Zeifman*, 212 S.W.3d at 588 (citing *Echols v. Olivarez*, 85 S.W.3d 475, 477–78 (Tex. App.—Austin 2002, no pet.)). We use the traditional sufficiency review in determining the first question. *Zeifman*, 212 S.W.3d at 588 (citing *Echols*, 85 S.W.3d at 478). We then determine whether, based on the evidence, the court's decision was arbitrary or unreasonable. *Id.*

"When the appellate record includes the reporter's and clerk's records, . . . the trial court's findings, express or implied, are not conclusive and may be challenged on appeal for evidentiary sufficiency." *Lopez v. Rendsland*, No. 03-10-00084-CV, 2010 WL 4053787, at *5 (Tex. App.—Austin Oct. 12, 2010, no pet.) (mem. op.) (citing *Sixth RMA Partners v. Sibley*, 111 S.W.3d 46, 52 (Tex. 2003)). However, the trial court has wide discretion in determining what is in the best interest of the child and its finding will not be disturbed absent an abuse of discretion. *Avila v. Avila*, No. 03-05-00030-CV, 2006 WL 2986225, at *4 (Tex. App.—Austin Oct. 20, 2006, no pet.) (mem. op.) (citing *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982); *Coleman v. Coleman*, 109 S.W.3d 108, 110 (Tex. App.—Austin 2003, no pet.)). In this case, the trial court entered findings

that the modifications regarding conservatorship, possession, and support of the child, and any limitations on Stokes' right to possession of or access to the child, were in the child's best interest.

In her appeal, Stokes only challenges the legal sufficiency of the evidence to support the trial court's findings. A trial court's findings of fact are reviewed by the same standards as a jury verdict. *Id.* In determining legal sufficiency, the appellate court determines "whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005); *Basley v. Adoni Holdings, LLC*, 373 S.W.3d 577, 582 (Tex. App.—Texarkana 2012, no pet.). In looking at the evidence, we credit favorable evidence if a reasonable jury could and disregard contrary evidence unless a reasonable jury could not. *City of Keller*, 168 S.W.3d at 827. The evidence is legally insufficient if (1) there is a complete absence of evidence of a vital fact, (2) the rules of law or of evidence bar the court from giving weight to the only evidence offered to prove a vital fact, (3) there is no more than a mere scintilla of evidence offered to prove a vital fact, or (4) the opposite of the vital fact is conclusively established by the evidence. *Jelinek v. Casas*, 328 S.W.3d 526, 532 (Tex. 2010); *Zeifman*, 212 S.W.3d at 588. When reviewing the legal sufficiency to support a finding, "we examine the record for evidence and inferences that support the challenged finding, while disregarding all contrary evidence and inferences." *Zeifman*, 212 S.W.3d at 588.

Further, in a trial to the bench, the trial court is the sole judge of the credibility of the witnesses and the weight to be given to their testimony. *Health Tronics, Inc. v. Lisa Laser USA, Inc.*, 382 S.W.3d 567, 582 (Tex. App.—Austin 2012, no pet.)); *see City of Keller*, 168 S.W.3d at 819. This is because "the trial judge is best able to observe and assess the witnesses' demeanor

17

and credibility, and to sense the 'forces, powers, and influences' that may not be apparent from merely reading the record on appeal." *Coburn*, 433 S.W.3d at 823 (quoting *In re A.L.E.*, 279 S.W.3d 424, 427 (Tex. App.—Houston [14th Dist.] 2009, no pet.)). Therefore, we defer to the trial court's judgments that involve credibility determinations and its factual resolutions affected by those determinations.[14] *Id.*

### 2. Analysis

#### a. Joint Managing Conservatorship with Equal Possession and Access

There is a presumption that appointing the parents of the child as joint managing conservators is in the best interest of the child. TEX. FAM. CODE ANN. § 153.131(b) (West 2014). Further, it is within the discretion of the trial court to grant equal access and possession when it appoints the parents joint managing conservators. *See* TEX. FAM. CODE ANN. § 153.134 (West 2014). The presumption in favor of joint managing conservatorship is removed if there is a finding of a history of family violence involving the parents. TEX. FAM. CODE ANN. § 153.131(b); *Hinkle v. Hinkle*, 223 S.W.3d 773, 779 (Tex. App.—Dallas 2007, no pet.). Stokes, who sought to be appointed sole managing conservator of the child, bore the burden to rebut the statutory presumption that a joint managing conservatorship was in the best interest of the child. *Hinkle*, 223 S.W.3d at 779; *Lide v. Lide*, 116 S.W.3d 147, 151 (Tex. App.—El Paso 2003, no pet.). Stokes

---

[14]In her brief, Stokes asserts that the trial court erred in placing any weight on the testimony of Sherry, Gonzalez, and Corsbie, arguing that they are not credible witnesses. However, for the reasons stated, we defer to the trial court's determination of the credibility of these witnesses and the weight to be given their testimony.

18

could meet this burden by either showing that there was a history of family violence involving Corsbie or that joint managing conservatorship was not in the best interest of the child.

At trial, Sherry testified that Stokes had reported to her that Corsbie had a history of family violence. However, she also testified that Stokes and Corsbie told conflicting stories, and she had nothing to support either of their stories. She was also unaware of any conviction against Corsbie for family violence. Gonzalez testified that in her investigation, she found notes from Stokes to the staff of her child's school accusing Corsbie of domestic violence, but that she believed these notes were unreasonable. She also testified that after her investigation, she did not have any concern that Corsbie had a propensity for family violence.

Stokes points to the testimony of Nubia Brede-Clyde,[15] who investigated an allegation of sexual abuse involving E.R.C. and Corsbie. However, although Brede-Clyde testified that some alleged behavior by Corsbie might be construed to have been grooming behavior that could later lead to sexual abuse, she ultimately concluded that there was no grooming. She also testified that the child had made no outcry of sexual abuse and that abuse was ruled out in the investigation. On this record, the trial court could have reasonably found that no history of family violence involving Corsbie had been shown.

To determine whether Stokes met her burden that Corsbie's appointment as joint managing conservator was not in the child's best interest, we examine the factors set forth in the Family

---

[15]Apparently, the parties were both well aware of the identity of Brede-Clyde and her qualifications. When she was called to testify, she was neither asked to identify herself nor questioned about her curriculum vitae. Nevertheless, she testified as would an expert. An independent search by this Court indicates that a Nubia Brede-Clyde is a Human Services Technician with the Texas Department of Family and Protective Services. It is our assumption that this is the same person.

Code.[16] *See Lide*, 116 S.W.3d at 152–53. Several witnesses at trial testified that they had observed Corsbie and E.R.C. together and that Corsbie and E.R.C. had a normal father-daughter relationship, that they were bonded, and that E.R.C. obeys Corsbie. One witness testified that Corsbie always explains things to E.R.C. and never gets upset or raises his voice at her. E.R.C.'s therapist, Dr. Susan McMillan, testified that E.R.C. is comfortable with both parents and that there is not a notable difference in their parenting abilities. She acknowledged that at first Corsbie had boundary issues (both at school and at home) but that these were addressed and resolved. She was concerned about E.R.C. in the social area and had recommended that she become involved in group activities. She agreed that it was good for E.R.C. that Corsbie had enrolled her in some team sports. McMillan also testified that Stokes and Corsbie have not communicated well in the past and that this lack of effective communication was not good for E.R.C. She also testified that E.R.C. has a good relationship with Stokes, Corsbie, and her grandparents and that both parents

---

[16]Section 153.134 of the Family Code provides that in determining whether joint managing conservatorship is in the child's best interest, courts are to consider the following factors:

> (1)    whether the physical, psychological, or emotional needs and development of the child will benefit from the appointment of joint managing conservators;

> (2)    the ability of the parents to give first priority to the welfare of the child and reach shared decisions in the child's best interest;
> (3)    whether each parent can encourage and accept a positive relationship between the child and the other parent;

> (4)    whether both parents participated in child rearing before the filing of the suit;

> (5)    the geographical proximity of the parents' residences;

> (6)    if the child is 12 years of age or older, the child's preference, if any, regarding the person to have the exclusive right to designate the primary residence of the child; and

> (7)    any other relevant factor.

TEX. FAM. CODE ANN. § 153.134(a) (West 2014).

had adopted her recommendations in regard to E.R.C. She saw no pattern of neglect by either parent and saw no need for supervised visitation. She also testified that she saw no evidence of one parent alienating E.R.C. from the other.

In addition, Gonzalez testified that both parents have their challenges. She testified that she questioned Corsbie's judgment in basic parenting sometimes and gave examples illustrating her concern. However, she also testified that she had recommended that he get parent coaching and that he had done so. She testified that both parents are committed to E.R.C. and that they both enrich her life academically. Gonzalez also testified that Corsbie has been responsive to her suggestions, but that Stokes has had problems either with her suggestions or understanding how things impact E.R.C. and that Stokes may lack insight into what is going on with E.R.C. She testified that Corsbie has kept E.R.C.'s therapist informed with what is going on with E.R.C., but that Stokes had often stated that she did not think E.R.C. needed to be seeing the therapist.

Stokes points to the concerns of Corsbie's mother regarding his ability to parent E.R.C. His mother expressed concern about Corsbie's anger and memory problems. However, she also testified that Corsbie and E.R.C. are close and have a loving relationship. Stokes stated that her relationship with Corsbie is strained, but that Corsbie was happy that E.R.C. was spending some time with her.

Thus, the evidence showed that although Corsbie had his challenges in parenting, he was making progress and taking advantage of the help offered to him to improve his parenting skills. In addition, the evidence showed that he was supportive of E.R.C.'s emotional, physical, and psychological needs and recognized her need of a professional therapist. Also, Corsbie has

21

participated in rearing E.R.C., and the evidence indicates that he gives her welfare first priority. On this record, the trial court could reasonably find that Stokes had not overcome the presumption that joint conservatorship was in the best interest of the child. Since the presumption that joint managing conservatorship is in the best interest of the child supports the trial court's order, the trial court did not abuse its discretion in appointing Stokes and Corsbie as joint managing conservators. In addition, based on the testimony of the child's therapist and the guardian ad litem, the trial court could reasonably find that the child's best interest was best served by granting each parent equal access and possession. Therefore, we find that Stokes has not shown that the trial court abused its discretion in granting equal possession and access to the joint managing conservators.

### b. Exclusive Right to Determine Primary Residence and to Make Educational, Medical, and Dental Decisions

In challenging the trial court's order granting Corsbie the exclusive right to determine E.R.C.'s primary residence and to make educational, medical, and dental decisions for her, Stokes points to the concerns expressed by Corsbie's mother, asserts that McMillan testified that Stokes is a better decision maker, and maintains that Clyde-Brede testified that Corsbie was probably grooming E.R.C. As seen above, however, the testimony of Corsbie's mother was equivocal, McMillan commended the decision-making abilities of both parents, and Clyde-Brede testified that she ultimately concluded that no grooming on the part of Corsbie had occurred. In addition, the testimony of other witnesses showed that Corsbie was actively engaged in improving his parenting skills and in ensuring that E.R.C.'s medical and psychological needs were met. Based on this evidence, the trial court could reasonably conclude that it was in the child's best interest

that Corsbie be given these parental rights. Therefore, we find that no abuse of discretion has been shown.

### c. Child Support

When a joint managing conservatorship is ordered, the trial court may order one joint managing conservator to pay child support to the other joint managing conservator. TEX. FAM. CODE ANN. § 153.138 (West 2014). In this case, the trial court ordered Stokes to pay Corsbie $350.00 per month child support. In her brief, Stokes does not challenge the amount of child support she was ordered to pay. Rather, she contends that Corsbie should have been ordered to pay her child support based on his net resources. The evidence showed that at the time of trial, Stokes had statutory net resources of $4,433.00 per month and that Corsbie had statutory net resources of $1,943.04 per month. At trial, Corsbie testified that he had sold a small apartment building he owned for a sales price of $340,000.00 in 2013. There was no evidence or testimony to show the amount he netted from the sale. In addition, Corsbie testified that he sold the apartments to pay bills related to the litigation and to pay property taxes. There was no testimony regarding how much of the net proceeds, if any, Corsbie retained at the time of trial. Based on this record, no abuse of discretion has been shown in the trial court ordering Stokes, who had significantly more monthly net resources than Corsbie, to pay child support.[17]

---

[17]We also note that the amount of child support Stokes is obligated to pay is significantly less than the twenty percent of her monthly net resources under the child support guidelines. *See* TEX. FAM. CODE ANN. § 154.125 (West Supp. 2015).

23

### E. Attorney Fees

Stokes also asserts that the trial court erred in awarding attorney fees to Corsbie. Although she concedes that the trial court may award attorney fees in a suit affecting the parent-child relationship, *see* TEX. FAM. CODE ANN. §§ 106.001, 106.002 (West 2014), she argues that the award of attorney fees in this case was unreasonable.[18] We review the award of attorney fees in a suit affecting the parent-child relationship for an abuse of discretion. *Bruni v. Bruni*, 924 S.W.2d 366, 368 (Tex. 1996).

In this case, the trial court entered findings of fact concluding that good cause existed for the award of attorney fees because (1) "Stokes abused the judicial process . . . [by] fil[ing] numerous and unnecessary pleadings which caused the attorneys for [] Corsbie to spend numerous hours reviewing and responding to matters not relevant to the case" and (2) "Stokes threatened to file and did file numerous motions, complaints, and lawsuits against various professionals that had any involvement with this action." Stokes does not challenge these findings. "Unchallenged findings of fact are binding unless there is no evidence to support the finding or the contrary is established as a matter of law." *McElwrath v. McElwrath*, No. 03-14-00487-CV, 2016 WL 1566624, at *1 (Tex. App.—Austin Apr. 13, 2016, no pet. h.) (mem. op.) (citing *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 696 (Tex. 1986)). The record in this case shows that Stokes filed a motion to disqualify Corsbie's attorney based on her belief that her great uncle had raped the attorney's mother and that, as a result, the attorney's personal issues were adversely affecting the best interest of the child. She later withdrew this motion. Over the next six months, however, she

---

[18]Stokes does not challenge the sufficiency of the evidence to support the amount of attorney fees awarded.

filed two requests and two amended requests for DNA testing, asking the trial court to order Corsbie's attorney to submit to DNA testing based on the same belief. Corsbie necessarily was required to respond to these pleadings. These motions also resulted in two hearings before they were denied as not pertinent to any issue in the case. This evidence supports the trial court's unchallenged findings. Therefore, we find that the trial court did not abuse its discretion in awarding attorney fees to Corsbie.

Since Stokes has not shown any individual error, we overrule Stokes' cumulative error issue. *See Caro*, 2003 WL 21354602, at *8.

We affirm the judgment of the trial court.

 

 

Bailey C. Moseley
Justice

Date Submitted:     March 11, 2016
Date Decided:     June 14, 2016

25