# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-18-00389-CV

C. M., Appellant

v.

Texas Department of Family and Protective Services, Appellee

FROM THE DISTRICT COURT OF BELL COUNTY, 146TH JUDICIAL DISTRICT
NO. 283,065-B, HONORABLE JACK WELDON JONES, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant C.M. appeals the district court's decree of termination rendered on the jury's verdict terminating her parental rights to her six children, O.M., S.M.-M., J.M.-M., P.M.-M., J.M., and J.P.R.-M.[1]  The jury found that as to each child Appellant: (1) knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endangered the physical or emotional well-being of the child; or (2) engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangered the physical or emotional well-being of the child. *See* Tex. Fam. Code § 161.001(b)(1)(D), (E).  The jury also found that termination of Appellant's parental rights was in each child's best interest.  *See id.* § 161.001(b)(2).  On appeal, Appellant contends that the district judge made "incurable" statements commenting on the weight of a

---

[1]  We refer to the parties by their roles in this appeal.  *See* Tex. R. App. P. 9.8(b).

witness's testimony and that Appellant's trial lawyer provided ineffective assistance.[2]  We will affirm the district court's decree of termination.

## BACKGROUND[3]

Several witnesses testified during trial, including Appellant, Department conservatorship worker Tracey Scott, the children's guardian ad litem Carla Wright, and clinical psychologist Dr. James N. Shinder.  The jury heard that Appellant is the biological mother of then eleven-year-old O.M., ten-year-old S.M.-M., nine-year-old J.M.-M., five-year-old P.M.-M., two-year-old J.M., and ten-month old J.P.R.-M.  The uncontroverted evidence at trial showed that Appellant was arrested for sexual assault of a child, that she was currently incarcerated in the Texas prison system, that her six children were fathered by three different men, that she did not know the father of her fifth child, and that she did not know the name of the father of her sixth child, who was born while she was in prison.

Dr. James N. Shinder testified about Appellant's psychosexual evaluation and the inconsistencies between the responses she provided to him during the evaluation and the testimony she provided during her subsequent criminal trial involving her sexual acts with her boyfriend and a minor girl who had been provided with alcohol in Appellant's home.  Dr. Shinder testified about Appellant's impulsivity, "extremely poor judgment," and denial of any sexually abusive behavior.  He noted Appellant's testimony about the circumstances of her sixth child's conception, which resulted after she had sex with a man whose name she did not know, who had just fixed her vehicle.

---

[2] Appellant does not challenge the sufficiency of the evidence supporting the jury's findings.

[3] The facts are summarized from the testimony and exhibits admitted into evidence at trial.

Dr. Shinder's assessment concluded that Appellant was "incapable of adequately parenting at this time due to severe dysfunction as described." He testified that a person who abuses a non-biological child has a 12%–15% propensity to abuse a biological child next, if there is a second offense. Dr. Shinder also testified that he was concerned about Appellant's judgment as to the men she would bring into her home with her children around.

Appellant acknowledged during her testimony that her children were removed from her because of her arrest for sexual assault of a child. Appellant then invoked her Fifth Amendment privilege not to testify when asked whether she was charged with having a sexual relationship with a girl named S., where her children were when she was in bed with her boyfriend and S., and how long she was going to be in prison.

Tracey Scott, the Department's conservatorship worker assigned to Appellant's children, also testified. She stated that Appellant was currently incarcerated at a women's prison in Gatesville and that Appellant's children are in foster care. Scott testified that Appellant's youngest child was born after her five older children were removed from her care, so the sixth child never lived with his siblings. Scott stated that the five older children were doing very well in foster care, that they were happy, learning to play musical instruments, and doing well in school. The youngest child was also doing very well with his foster family, meeting all developmental milestones, and had never known Appellant as his biological mother. Scott stated that both sets of foster parents want to adopt the children in their care, and that it would be in the best interest of the children to terminate Appellant's parental rights.[4]

---

[4] Scott testified that the parental rights of the fathers had been terminated in another proceeding.

The jury then heard from the guardian ad litem for Appellant's children, Carla Wright, who testified that she was concerned about Appellant's ability to be protective and the type of man that Appellant would choose to have around her children when Appellant gets out of prison. Wright stated that Appellant had shown "very poor judgment" in allowing a fifteen-year-old girl to consume alcohol in Appellant's home and that Appellant did not show protectiveness by blaming the girl for being sexually abused by Appellant's boyfriend. Wright testified that such choices raise questions about a parent's ability to be protective of the parent's own children if the parent allows something to happen to another child. Wright also testified that Appellant's children were doing "fantastic" and "very happy" with their foster parents who provide them with stability, permanency, and love, and that no family members came forward to take the children. Wright noted that five of the children were in the same foster home and that the youngest child is in a foster home nearby to maintain sibling contact. Both sets of foster parents want to adopt the children. Ultimately, Wright concluded that the children should be freed for adoption, and that it was in the children's best interest to terminate Appellant's parental rights.

After the trial, the district court signed a decree terminating Appellant's parental rights to her six children. This appeal followed.

## DISCUSSION

**No showing of incurable statements as to weight of witness's testimony**

In her first issue, Appellant contends that the district judge made "incurable" statements commenting on the weight of a witness's testimony. Specifically, she complains that after "the Rule" was invoked and before any testimony began, the judge informed the jury that the

4

Rule did not apply to Dr. Shinder as an expert witness. *See* Tex. R. Civ. P. 267(a)–(b), Tex. R. Evid. 614(c) (providing that on party's request, trial court must order witnesses excluded from courtroom so they cannot hear other witnesses' testimony and providing exemption for certain witnesses, including those shown to be essential to presentation of case).[5] Appellant also complains that when she later objected to a leading question asked of Dr. Shinder, the judge stated that Dr. Shinder was qualified as an expert and could be led.

Appellant acknowledges that she failed to object at trial to either of those statements. Further, the record reflects that Appellant raised no objection when the judge asked beforehand whether Dr. Shinder would be testifying. *See In re E.R.C.*, 496 S.W.3d 270, 282–83 (Tex. App.—Texarkana 2016, pet. denied) (concluding that mother's failure to object to witness at trial as unqualified to give expert testimony failed to preserve error for appeal); *In re M.D.S.*, 1 S.W.3d 190, 200 (Tex. App.—Amarillo 1999, no pet.) (noting that "failure to object to a witness's qualifications as an expert fails to preserve error for appeal"); *see also Wilfin, Inc. v. Williams*, 615 S.W.2d 242, 244 (Tex. App.—Dallas 1981, writ ref'd n.r.e.) ("[A] witness is presumed to be qualified to give his opinion, when the opinion is admitted without objection."). In Appellant's view, no objection was necessary because the judge's statements "are inherently prejudicial, invade the province of the jury, and are therefore incurable."

---

[5] We note that if Appellant had objected, the judge would have had the opportunity to rule on whether Dr. Shinder was essential to the presentation of the Department's case. *See* Tex. R. Civ. P. 267(a)–(b), Tex. R. Evid. 614(c). In any event, because Dr. Shinder was the first witness at trial, it would have been unnecessary to exclude him from the courtroom after the Rule was invoked to prevent him from hearing the testimony of another witness before he testified.

However, the only authority that Appellant cites held that the trial judge's statements were *not* incurable and that complaints about the trial judge's statements were *not* preserved for appellate review. *See In re Commitment of Stuteville*, 463 S.W.3d 543, 558 (Tex. App.—Houston [1st Dist.] 2015, pet. denied); *Capellen v. Capellen*, 888 S.W.2d 539, 547 (Tex. App.—El Paso 1994, writ denied). Appellant offers no authority for her argument that a trial judge's statements like the ones she complains of here—i.e., recognizing a witness as an expert exempt from the Rule before any testimony began and overruling an objection to a leading question asked of a witness whom the court said was qualified as an expert—are inherently prejudicial or incurable. *See* Tex. R. App. P. 38.1(I) (requiring briefs to contain citation to authority for arguments); *In re I.C.*, No. 02-15-00300-CV, 2016 Tex. App. LEXIS 3643, at *37 (Tex. App.—Fort Worth Apr. 7, 2016, no pet.) (mem. op.) (rejecting father's complaint that trial court's comments deprived him of fair trial on termination of his parental rights where father cited no legal authority for his contentions). Without such authority, and in the absence of an objection at trial, Appellant has failed to preserve her complaint that statements made by the court constituted comments on the weight of the evidence. *See* Tex. R. App. P. 33.1(a) (requiring timely request, objection, or motion to trial court to preserve complaint for appellate review). We overrule Appellant's first issue.

**No showing that trial counsel provided ineffective assistance**

In her second issue, Appellant contends that her trial counsel provided ineffective assistance by not challenging Dr. Shinder's qualifications and the reliability of his opinions, not ensuring that voir dire proceedings were on the record, and not making various objections and a motion to strike at trial. Proving ineffective assistance of counsel requires showing: (1) commission

of errors so serious that counsel was not functioning as "counsel" guaranteed by the Sixth Amendment, and (2) that counsel's deficient performance prejudiced the defense—i.e., "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *In re M.S.*, 115 S.W.3d 534, 545 (Tex. 2003) (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). We must determine "whether there is a reasonable probability that, but for counsel's unprofessional error(s), the result of the proceeding would have been different." *Id.* at 549–50 (cleaned up).

In adopting the *Strickland* test for parental termination cases, the Texas Supreme Court noted that, taking into account all of the circumstances surrounding the case, we "must primarily focus on whether counsel performed in a reasonably effective manner. . . . In this process, we must give great deference to counsel's performance, indulging a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, including the possibility that counsel's actions are strategic." *Id*. at 545 (cleaned up). Challenged conduct constitutes ineffective assistance only if it is "so outrageous that no competent attorney would have engaged in it." *In re H.R.M.*, 209 S.W.3d 105, 111 (Tex. 2006) (quoting *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001)); *Maxwell v. Texas Dep't of Family & Protective Servs.*, No. 03-11-00242-CV, 2012 Tex. App. LEXIS 2339, at \*17 (Tex. App.—Austin Mar. 23, 2012, no pet.) (mem. op.) (fact that case could have been tried differently does not establish that counsel's performance was deficient). Additionally, allegations of ineffective assistance in a parental-rights termination case must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Walker v. Texas Dep't of Family and Protective Servs.*,

7

312 S.W.3d 608, 622–23 (Tex. App.—Houston [1st Dist.] 2009, pet. denied); *see In re K.A.D.K.*, No. 04-15-00758-CV, 2016 Tex. App. LEXIS 4056, at *22 (Tex. App.—San Antonio Apr. 20, 2016, pet. denied) (mem. op.). When the record is silent as to the reasons for counsel's conduct, a reviewing court may not speculate to find counsel's representation ineffective. *Walker*, 312 S.W.3d at 623; *In re K.A.D.K.*, 2016 Tex. App. LEXIS 4056, at *22.

Review of the record does not affirmatively show that Appellant's trial counsel committed errors so serious that he was not functioning as "counsel" guaranteed by the Sixth Amendment or that any deficient performance prejudiced Appellant. Although Appellant contends that her trial counsel was ineffective because he did not challenge Dr. Shinder's qualifications as an expert, nothing in the record from trial indicates that Dr. Shinder was unqualified to give the opinions that he offered or to perform Appellant's psychological evaluation. *See Maxwell*, 2012 Tex. App. LEXIS 2339, at *17–18 (rejecting claim that attorney provided ineffective assistance in termination-of-parental-rights trial by failing to challenge witness's qualifications as clinical psychologist). Dr. Shinder testified that he is licensed by the State of Texas as a clinical psychologist, as a sex-offender treatment provider, and as a marriage and family therapist. He also testified that he obtained a Ph.D. in psychology and a Master's degree in public health, and that had been a practicing psychologist for almost fifty years. Further, nothing in the record indicates that if the trial court had conducted a hearing on reliability, the evidence supporting Dr. Shinder's opinion would have been shown to be unreliable. *See In re J.F.C.*, 96 S.W.3d 256, 284 (Tex. 2002).

Appellant also contends that her trial counsel was ineffective because he did not ensure that voir dire proceedings were on the record, but she offers no explanation of what error

8

would have been shown if the record had been taken.[6]  *See In re M.S.*, 115 S.W.3d at 545–46 (rejecting claim that trial attorney provided ineffective assistance based on his failure to obtain record of voir dire, charge conference, and closing arguments without showing "what errors would have been recorded if a record had been made").

Appellant further contends that her trial counsel was ineffective because he did not make a motion to strike references to her conviction and because he did not make various objections during trial.  She complains specifically that counsel did not object to: (1) Dr. Shinder's qualifications by raising a *Daubert* challenge; (2) the court stating that Dr. Shinder was an expert and that Dr. Shinder was qualified as an expert in the presence of the jury; (3) the court exempting Dr. Shinder from the Rule; (4) the pretrial admission of Dr. Shinder's report as hearsay; (5) hearsay and improper predicate when Dr. Shinder testified about statements he read in the transcript of Appellant's criminal trial; and (6) Dr. Shinder's testimony referring to undisclosed reports about convicted sex offenders.  She contends that Dr. Shinder's testimony was the only evidence linking her actions with potential danger to her children, and without the evidence he provided, the Department would have been unable to support the grounds for termination of her parental rights.

However, nothing in the record shows the basis for counsel's decisions not to take the complained-of actions.  Because the record is silent as to the reasons for counsel's conduct, we may not speculate to find counsel's performance deficient.  *See Walker*, 312 S.W.3d at 623 ("We may not speculate to find trial counsel ineffective when the record is silent regarding counsel's

---

[6] We note that an entry on the judge's docket sheet for the first day of trial reflects that voir dire proceedings were on the record: "voir dire was conducted (record made)."

9

reasons for his actions."). Without evidence about strategic reasons for trial counsel's behavior, Appellant fails to overcome the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *See In re M.S.*, 115 S.W.3d at 545; *see also Strickland*, 466 U.S. at 689.

Even if we were to assume that trial counsel's performance was deficient for the complained-of reasons, nothing in the record shows that but for counsel's allegedly unprofessional errors, the result of the proceedings would have been different. *See In re M.S.*, 115 S.W.3d at 549–50; *see also Strickland*, 466 U.S. at 694. The uncontroverted evidence at trial showed that Appellant was arrested for sexual assault of a child and that she was currently incarcerated in the Texas prison system. Appellant herself testified that she was arrested for sexual assault of a child, that her children were living with her at the time, and that her children were removed from her because of that arrest. Appellant then invoked her Fifth Amendment privilege not to testify when asked whether she was charged with having a sexual relationship with a girl named S., where her children were when she was in bed with her boyfriend and S., and how long she was going to be in prison. The jury was instructed that it could draw inferences about what Appellant's testimony might be because of her invocation of the Fifth Amendment privilege. *See Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976) (concluding that Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them); *In re V.J.G.*, No. 07-12-00541-CV, 2013 Tex. App. LEXIS 3493, at *8 n.3 (Tex. App.—Amarillo Mar. 26, 2013, no pet.) (mem. op.) (noting, in appeal from order terminating parental rights, that "[i]n a civil case, the fact finder is free to draw negative inferences from a party's

assertion of the privilege against self-incrimination"); *see also In re J.D.*, 436 S.W.3d 105, 118 (Tex. App.—Houston [14th Dist.] 2014, no pet.) ("[A] fact finder may infer that past conduct endangering the well-being of a child may recur in the future if the child is returned to the parent."); *In re D.J.W.*, 394 S.W.3d 210, 220 (Tex. App.—Houston [1st Dist.] 2012, pet. denied) (concluding that parental conduct occurring before and after child has been removed by Department may be considered in determining whether termination is justified).

The jury also heard from Tracey Scott, the children's conservatorship worker, who testified that the five older children were doing very well in foster care, that they were happy, learning to play musical instruments, and doing well in school. She also testified that the youngest child was doing very well with his foster family, meeting all developmental milestones, and had never known Appellant as his biological mother. Scott noted that both sets of foster parents want to adopt the children in their care, and that it would be in the best interest of the children to terminate Appellant's parental rights.

The children's guardian ad litem, Carla Wright, told the jury that she was concerned about Appellant's ability to be protective of her own children, about Appellant's poor judgment and irresponsible life decisions in the past, and about the type of man that Appellant would choose to have around her children when Appellant gets out of prison. Wright further testified that Appellant's children were doing "fantastic" and "very happy" with their foster parents who provide them with stability, permanency, and love, and that no family members came forward to take the children. Five of the children were in the same foster home and the youngest child is in a foster home nearby to maintain sibling contact. Both sets of foster parents want to adopt the children. Ultimately, Wright

concluded that the children should be freed for adoption, and that it was in the children's best interest to terminate Appellant's parental rights.

Given this record, we find no ineffective assistance of counsel warranting reversal. We overrule Appellant's second issue.

## CONCLUSION

We affirm the district court's decree of termination.

_____

Jeff Rose, Chief Justice

Before Chief Justice Rose, Justices Field and Bourland

Affirmed

Filed: November 1, 2018