**AFFIRMED and Opinion Filed November 26, 2019**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

**No. 05-18-00201-CV**

## IN THE INTEREST OF A.R.W., A CHILD

**On Appeal from the 417th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 417-52158-2016**

# MEMORANDUM OPINION

Before Justices Whitehill, Partida-Kipness, and Pedersen, III
Opinion by Justice Whitehill

We deny Father's motion for rehearing. On our own motion, we withdraw our August 20, 2019 memorandum opinion and vacate the judgment of that date. This is now the opinion of the Court.

This is an appeal from a child-support modification order. Mother and Father are the divorced parents of one child, Daughter. By court order, Father had primary custody of Daughter, Mother had expanded standard possession of Daughter, and Father had to pay Mother monthly child support of $1,360. Father filed a motion to modify seeking an order requiring Mother to pay him child support under the statutory guidelines. After a bench trial, the trial court found a material and substantial change in Mother's circumstances, but it gave Father only partial relief by reducing his monthly child-support obligation to $700. Father appeals.

The pivotal question is whether the trial court acted arbitrarily, unreasonably, and without regard to guiding rules and principles by deciding that requiring Father to pay Mother monthly child support of $700 was in Daughter's best interest. We conclude that the child-support guidelines and the evidence support the trial court's decision, so it was not an abuse of discretion. Accordingly, we affirm.

After finding that there was a positive material and substantial change in circumstances for the parent with whom the child lived 20–30% of the time, the trial court ordered the other parent to continue paying child support so that the child would have "adequate resources" at both parents' residences. Father complains that this result fundamentally shifts the underlying purpose of child support from being for the child's benefit to being for the benefit of the lower-paid parent. We disagree with that premise because, on this record, the trial court's decision was within the broad range of discretion the legislature grants trial courts to grant relief in a child's best interest.

Here, the trial court determined based on this record that the child's best interest was served by ordering a child-support payment that would give her adequate resources at both parents' residences. This may not be the decision we would have made had we decided the case in the first instance. But it was not our decision to make. We weren't there. We didn't hear the words as they were spoken, and we didn't watch the witnesses testify.

The legislature gave trial courts broad discretion as the frontline arbiters of the child's best interest to make these judgment calls. On this record, constrained by our limited role as a reviewing error correction court, we cannot say that the trial court abused its discretion in this case.

We instead recognize, as Father's rehearing motion concedes, that the Family Code does not "require that the parent with primary custody automatically be considered the child-support obligee." We further recognize that among the infinite number of combinations and permutations of circumstances in which divorced parents might find themselves, one of them is where the parent

–2–

without primary custody of the child needs financial assistance from the other parent to provide what a trial court—having absorbed all of the evidence in the first instance—considers to be adequate living accommodations while the child is living in that parent's abode. It is not hard to imagine situations where this result can occur. By granting trial courts discretion to establish support obligations in the child's best interest, TEX. FAM. CODE § 154.123(b)(17), the Family Code gives trial courts the ability to fashion appropriate resource allocations to determine "an equitable amount of child support" depending on the particular facts and circumstances in those individual situations, *id*. § 154.121. Indeed, the Family Code provides that "[t]he court may order either or both parents to support a child in the manner specified by the order." *Id*. § 154.001(a).

Thus, the question is not whether the trial court had the power to require a parent with whom the child lives most of the time to provide support to the other parent so the child could have a proper living environment while at the other parent's house; rather, the issue is whether there is record evidence from which the trial court could reasonably have done so in this case.

## I. BACKGROUND

### A. The Original Divorce Decree

Father and Mother married in 2000, and Daughter was born in 2005. Father and Mother divorced in 2013. Although the divorce decree is not in the appellate record, Father's brief asserts that neither party paid child support under that decree. We therefore accept that statement as true. *See* TEX. R. APP. P. 38.1(g).

### B. The First Modification Order

In October 2015, the trial court (the 367th District Court of Denton County) rendered a new final order based on Mother's petition to modify and Father's counter-petition.[1] This order (i) appointed Father and Mother as Daughter's joint managing conservators, (ii) gave Father the

---

[1] These pleadings and the order do not appear in the clerk's record, but the order was admitted into evidence at the trial and so appears in the reporter's record.

right to designate Daughter's primary residence, (iii) gave Mother possession per an expanded standard possession order, and (iv) required Father to pay Mother monthly child support of about $1,360.

The order recited that the court was departing from the statutory child-support guidelines and stated that "after considering the factors set forth in section 154.123 of the Texas Family Code it is in the child's best interest to have an adequate amount of resources available in each home to support a child." The court calculated Father's obligation by subtracting the guideline amount that Mother would owe as an obligor from the guideline amount that Father would owe as an obligor.

As far as the record reveals, Father did not appeal from that order.

## C. The Present Modification Suit

In April 2016, Father filed the present modification suit, which was then transferred from Denton County to Collin County.

In May 2016, Mother remarried.

Mother later filed a counter-petition to modify in which she sought the exclusive right to designate Daughter's primary residence and asked the court to give Father possession "according to a standard possession schedule with expanded elections."

In Father's last amended motion, he (i) alleged that Mother was intentionally underemployed, (ii) asked the court to order child support in strict compliance with the Family Code's guidelines, and (iii) argued that strict compliance would result in Mother's paying child support to Father.

In May 2017, the trial court conducted a one-day bench trial. At the trial's end, the judge said she would find that Mother's circumstances had materially changed for the better. At the judge's request, the parties filed supplemental briefs on the child-support issue.

Two months later, the trial judge signed a memorandum order that ordered Father to pay child support of $700 per month. Father requested findings of fact.

The trial judge later signed findings in support of her memorandum order. She found that it would be unjust and inappropriate to apply the Family Code § 154.125 guidelines. She also found that (i) Father's net monthly resources were $8,827.65, (ii) Mother's net monthly resources were $4,550, and (iii) each parent should pay child support based on 20% of the first $8,550 of that parent's net resources. Then she offset the awards, reducing Father's guideline obligation ($1,710) by Mother's guideline obligation ($910) and by an additional $100 to reflect Father's duty to provide Daughter's health insurance. The judge hand-wrote the following reasons for deviating from § 154.125:

> Providing adequate resources for the child @ both residences; the child support guidelines amount is being reduced in accordance with Mom's resources increasing since the entry of the last order in Denton County and are therefore, offset, but Court allows by this Order an acknowledgement of the nature of [Mother's] community college employment and recent employment of Mom's evidence at trial [sic].

A few months later the trial judge signed the final modification order. The order did the following:

- repeated the court's previous findings;

- ordered Father to pay child support of $700 per month, again calculated by taking Father's guideline support amount ($1,710) and subtracting both Mother's guideline support amount ($910) and $100 per month because Father paid for Daughter's health insurance;

- maintained both parents as joint managing conservators and maintained Father's existing right to designate Daughter's primary residence; and

- maintained Mother's existing right to possession consistent with an expanded standard possession order, except for a minor change to the parents' right of first refusal if a parent had to be away from Daughter for more than two consecutive nights during a possession period.

Father timely appealed.

## II. ISSUES PRESENTED

Although Father's brief lists four issues presented, the argument section has three distinct sections. We treat his brief as raising three issues corresponding to those sections, and we paraphrase those issues as follows:

1. Did the trial court abuse its discretion by rendering an order that ignores the Family Code and the child's best interest?

2. Did the trial court abuse its discretion by creating a new "adequate resources" rule that had no legal basis and risks harmful and inequitable consequences?

3. Did the trial court err by ordering Father to pay Mother child support when Mother did not plead for such relief?

## III. ANALYSIS

### A. Standard of Review

We review a child-support order for abuse of discretion. *Iliff v. Iliff*, 339 S.W.3d 74, 78 (Tex. 2011). A trial court abuses its discretion if it acts arbitrarily or unreasonably, without reference to guiding rules or principles. *Id*. A trial court also abuses its discretion if it fails to analyze or apply the law correctly. *Id*.

Legal and factual sufficiency of the evidence are relevant considerations in our abuse of discretion analysis. *In re A.M.W.*, 313 S.W.3d 887, 890 (Tex. App.—Dallas 2010, no pet.). We review the evidence in the light most favorable to the order and indulge every presumption in the order's favor. *Id*. "If some probative and substantive evidence supports the order, there is no abuse of discretion." *Id*.

### B. Applicable Law

Two fundamental principles operate in the background of every child-support determination:

First, the paramount guiding principle in child-support decisions should always be the child's best interest. *Iliff*, 339 S.W.3d at 81.

Second, "[t]he function of child support is to help *a* custodial parent maintain an adequate standard of living for the child." *Williams v. Patton*, 821 S.W.2d 141, 145 (Tex. 1991) (emphasis added).

### 1. Initial Child-Support Determinations

Although this is a modification case, we must place the modification statutes in context by first discussing the statutory scheme governing initial child-support determinations. That scheme is found in Family Code Chapter 154.

The trial court can order either or both parents to support their child. FAM. CODE § 154.001(a); *see also id*. § 151.001(3) (every parent has a duty to support his or her child). The trial court may order a joint managing conservator to pay child support to another joint managing conservator. *Id*. § 153.138. In determining the amount of child support, the court cannot consider a parent's sex or marital status. *Id*. § 154.010.

The Code establishes guidelines "to guide the court in determining an equitable amount of child support." *Id*. § 154.121.[2] This generally means calculating the child-support obligor's monthly "net resources" and applying the statutory guidelines (that is, a specific percentage based on the number of children) to that amount. *See In re P.C.S.*, 320 S.W.3d 525, 532–33 (Tex. App.— Dallas 2010, pet. denied); *see also* FAM. CODE § 154.125. But the court may use the obligor's earning potential instead of actual net resources if the obligor earns significantly less than he or she could earn because of intentional unemployment or underemployment. FAM. CODE § 154.066(a). In determining whether an obligor is intentionally unemployed or underemployed,

---

[2] In 1984, Congress required the states to adopt child-support guidelines. The federal Family Support Act of 1988 went further and required that state guidelines operate as a rebuttable presumption of the proper support amount. *See* Margaret Campbell Haynes & Susan Friedman Paikin, *"Reconciling" FFCCSOA and UIFSA*, 49 FAM. L.Q. 331, 333 n.10 (2015); Linda Henry Elrod, *The Federalization of Child Support Guidelines*, 6 J. AM. ACAD. MATRIM. LAW. 103, 104 (1990). But the guidelines may vary from state to state. *See* Charles J. Meyer et al., *Child Support Determinations in High Income Families—A Survey of the Fifty States*, 28 J. AM. ACAD. MATRIM. LAW. 483, 485, 488 (2016).

the court may consider evidence that the obligor is a veteran who is seeking or has been awarded certain disability benefits. *Id*. § 154.066(b).

Part of Father's argument is that Mother is, or should be, the statutory child-support "obligor" because he has possession of Daughter most of the time. But we find nothing in the Code saying which parent should be treated as the obligor for guideline purposes, and, as noted above, the Code authorizes the trial court to order either joint managing conservator to pay child support to the other. *Id*. § 153.138.

Father further argues that Mother should be the presumptive obligor because the function of child support is "to help a *custodial* parent maintain an adequate standard of living for the child." *Williams*, 821 S.W.2d at 145 (emphasis added). Father's reliance on that single sentence in *Williams* to argue that there can only be a single custodial parent is misplaced. Here, the parents share custody through a joint managing conservatorship. *Williams*, in contrast, addressed child-support arrearages in a sole managing conservatorship. The trial court may order either or both parents to support a child in the manner specified by the order. FAM. CODE § 154.001(a).

And when a joint managing conservatorship is ordered, the trial court may order one joint managing conservator to pay child support to the other joint managing conservator. *Id*. § 153.138; *see also In re E.R.C.*, 496 S.W.3d 270, 287 (Tex. App.—Texarkana 2016, pet. denied) (affirmed order requiring mother to pay child support to father based on mother's greater monthly net resources in joint managing conservatorship in which parents had equal access and possession); *see also Lowe v. Roberts*, No. 14-10-01191-CV, 2012 WL 50617, at *2 (Tex. App.—Houston [14th Dist.] Jan. 10, 2012, no pet.) (mem. op.) (Family Code §§ 153.138 and 153.134(b)(2) supported modifying parent–child relationship to require father to pay mother child support for six-month period that child lived with mother under joint managing conservatorship). We find no

support in the Family Code or Texas case law supporting Father's premise that only one parent may be a custodial parent.

The Code establishes presumptions favoring the guideline-determined amount. Specifically, that amount is presumptively reasonable, and a support order conforming to the guidelines is presumed to be in the child's best interest. FAM. CODE § 154.122(a). However, the court may depart from the guidelines "if the evidence rebuts the presumption that application of the guidelines is in the best interest of the child and justifies a variance from the guidelines." *Id*. § 154.123(a). To that end, § 154.123(b) supplies a lengthy list of nonexclusive factors that the trial court "shall consider" when determining whether applying the guidelines would be unjust or inappropriate under the circumstances. *Id*. § 154.123(b)(1)–(17).

If the trial court departs from the guidelines, Chapter 154 generally requires the court to make specific findings about the parties' net resources, the percentage the court is applying to the obligor's net resources, and the reasons for the departure. *Id*. § 154.130(a)(3), (b).

### 2. Modification Proceedings

Modification proceedings are governed by Family Code Chapter 156, and the provisions specific to child-support modification are found in Subchapter E, *id*. §§ 156.401–.409.

Per Chapter 156, a court with exclusive, continuing jurisdiction may modify a child-support order under certain circumstances, such as when the circumstances of the child or another person affected by the child-support order have materially and substantially changed since the order was rendered. *Id*. §§ 156.001, 156.401(a)(1)(A).

Further, concerning child-support modifications, under § 156.402:

(a) The court may consider the child support guidelines for single and multiple families under Chapter 154 to determine whether there has been a material or substantial change of circumstances under this chapter that warrants a modification of an existing child support order if the modification is in the best interest of the child.

–9–

(b)     If the amount of support contained in the order does not substantially conform with the guidelines for single and multiple families under Chapter 154, the court may modify the order to substantially conform with the guidelines if the modification is in the best interest of the child. A court may consider other relevant evidence in addition to the factors listed in the guidelines.

*Id.* § 156.402.

Subsections (a) and (b) are somewhat contradictory in that subsection (a) makes it merely permissive for the trial court in a modification case *to consider* the Chapter 154 guidelines when deciding whether there has been a material and substantial change since the existing order was decreed but subsection (b) authorizes the trial court to modify the prior order *to comply with* the Chapter 154 guidelines if doing so is in the child's best interest. Thus, like in an original Chapter 154 proceeding, the ultimate legislative directive in modification cases is that the guidelines are just that—factors to be considered but that can be deviated from if doing so is in the child's best interest. *See Melton v. Toomey*, 350 S.W.3d 235, 238 (Tex. App.—San Antonio 2011, no pet.) ("[A] court's consideration of the child support guidelines in a modification proceeding is discretionary, not mandatory.").

Other Code sections further show that the guidelines are relevant in modification cases. For example, § 156.406 says, "In applying the child support guidelines in a suit under this subchapter, if the obligor has the duty to support children in more than one household, the court shall apply the percentage guidelines for multiple families under Chapter 154." FAM. CODE § 156.406.

Finally, Chapter 156 provides other rules applicable to modification proceedings. For example, an increase in the obligee's needs, standard of living, or lifestyle "does not warrant an increase in the obligor's child support obligation." *Id.* § 156.405. Chapter 156, however, limits the courts' consideration of a new spouse's net resources or expenses in a modification suit. *Id.* § 156.404.

### 3. Summary of Guiding Rules and Principles

Because we review the child-support order for abuse of discretion, it is helpful to summarize the foregoing guiding rules and principles relevant to this case:

- The ultimate guiding principle is Daughter's best interest. *See Iliff*, 339 S.W.3d at 81.

- The more specific purpose of child support also must be kept in mind: "to help a custodial parent maintain an adequate standard of living for the child." *Williams*, 821 S.W.2d at 145.

- The Chapter 154 guidelines and the other Chapter 154 factors may be consulted in a modification proceeding and may be relevant to the child's best interest and thus to the propriety of the trial court's child-support modification order. *Cf. Iliff*, 339 S.W.3d at 81 n.5; *In re P.C.S.*, 320 S.W.3d at 532–34.

### C. Issues One and Two: Did the trial court abuse its discretion under the law and the evidence?

No, it didn't. The evidence reasonably supports a conclusion that reducing the amount of monthly child support Father is required to pay Mother from $1,361.86 per month to $700 per month still produced an amount that was in Daughter's best interest.

### 1. Unchallenged Fact Findings

Before addressing Father's arguments, we note that Father does not challenge all of the trial court's fact findings. In seeking modification of the child-support order, Father argued that Mother's circumstances have materially and substantially changed such that she now has adequate resources to support the child and should be ordered to pay child support to Father in strict compliance with Family Code guidelines. As such, Father naturally does not challenge the trial court's implied finding of a material and substantial change of circumstances sufficient to warrant a modification.[3] Nor does he challenge the finding that his net monthly resources are $8,827.65.

---

[3] Although the trial court expressly found a material and substantial change in its final order, we cannot consider findings contained in a judgment. *R.S. v. B.J.J.*, 883 S.W.2d 711, 715 n.5 (Tex. App.—Dallas 1994, no writ) (construing Texas Rule of Civil Procedure 299a); *see also In re E.A.C.*, 162 S.W.3d 438, 442–43 (Tex. App.—Dallas 2005, no pet.) (applying Rule 299a to final order in an original SAPCR proceeding). Instead we imply the finding from the relief granted.

He does not directly challenge the finding that Mother's net monthly resources are $4,550, but he does argue that the trial court erred by failing to find that Mother was intentionally underemployed.

**2.      Did the trial court abuse its discretion by failing to find that Mother was intentionally underemployed?**

No.  We reject Father's intentional underemployment argument for two reasons.

First, Father does not refer us to evidence establishing that Mother's true earning potential was higher than the $4,550 net resources figure the trial court found.  He argues instead that the evidence showed that Mother's earning potential was $45 per hour, but the evidence he cites relates to a part-time position.  This evidence did not compel the trial court to find that Mother could have obtained a full-time position at that wage.

Second, the evidence about Mother's employment supported the trial court's non-finding of intentional underemployment.  Mother testified about her part-time employment, her full-time employment pursuing her own business, and her veteran's disability benefits.  She also testified that she is working on getting a teaching certificate so she can teach twelfth grade.  *See Iliff*, 339 S.W.3d at 82 (trial courts may consider that a parent has laudable reasons for underemployment, such as seeking further education).  Father testified to the reasons he thought Mother was underemployed, but the trial court was entitled to weigh the witnesses' testimony and credibility as it chose.  *See Reisler v. Reisler*, 439 S.W.3d 615, 620 (Tex. App.—Dallas 2014, no pet.).  And the Family Code specifically allowed the court to take Mother's veteran's disability benefits into account in determining whether she was underemployed.  FAM. CODE § 154.066(b).

In sum, the trial court did not abuse its discretion by failing to find that Mother was intentionally underemployed.

**3.      Was the trial court's decision an abuse of discretion based on the evidence and the § 154.123 factors?**

No, on this record the trial court could reasonably determine that requiring Father to pay $700 per month in child support (rather than $1,361.86 per month) was in Daughter's best interest. We review the evidence in light of the § 154.123 factors and favorably to the trial court's decision. *See In re A.M.W.*, 313 S.W.3d at 890.

**a.      Sections 154.123(b)(2), (3), (5), (13):  Available Resources, Employment, and Special or Extraordinary Expenses**

**(1)      Resources**

Father does not challenge the finding that his monthly net resources are $8,827.65.  Nor has he successfully attacked the finding that Mother's monthly net resources are $4,550.  Thus, Father's monthly net resources are almost twice Mother's.  This is some evidence supporting the discretionary decision to make Father the net child-support obligor.  *See In re E.R.C.*, 496 S.W.3d at 287.

**(2)      Expenses**

Mother introduced a financial statement stating that her monthly living expenses totaled $5,732.  This exceeded her monthly net resources by over $1,000.  Although the trial court implicitly rejected the part of Mother's financial statement showing her net monthly income to be $1,614 (since the court found her monthly net resources to be $4,550), the court was entitled to credit the remainder of the financial statement if it so chose.  Mother also introduced evidence that in October 2015 she could not afford to pay $110 for Daughter to go on a camping trip.  Thus, the evidence that Mother's monthly living expenses exceeded her monthly net resources could reasonably support the trial court's conclusion that Daughter's best interest required Father to pay some child support.

–13–

Father testified that his financial condition had recently deteriorated, he owed his girlfriend around $90,000, and he was currently running a deficit of $4,000 to $5,000.[4] He also testified that his girlfriend, whom he lived with, had been ill and unable to work. He further testified that (i) he pays for Daughter's school activities and social functions and (ii) Mother testified at her deposition that she had adequate resources in her home to provide for Daughter. But the trial court was entitled to assess Father's credibility and give his evidence the weight it deemed appropriate.

Father argues that there was evidence that Mother's new husband contributes towards their household expenses and has a gross monthly income of $13,000. In a modification suit, however, "[t]he court may not add any portion of the net resources of a new spouse to the net resources of an obligor or obligee in order to calculate the amount of child support to be ordered." FAM. CODE § 156.404(a).

Father also argues that in October 2016 Mother upgraded her living arrangement from an apartment to a 3,500 square-foot house costing some $434,000. Mother testified that she and her new husband factored the $1,360 she was receiving in child support into their monthly budget when they were looking at homes to buy.

Moving into a more expensive residence does not qualify as a material or substantial change in circumstances sufficient to support an *increased* child-support award. *See In re J.A.H.*, 311 S.W.3d 536, 542 (Tex. App.—El Paso 2009, no pet.); *see also* FAM. CODE § 156.405 ("An increase in the needs, standard of living, or lifestyle of the obligee since the rendition of the existing order does not warrant an increase in the obligor's child support obligation."). But the order here did not increase the child-support award; rather, the trial court at Father's request reduced by almost half the amount of support he is required to pay.

---

[4] Father did not explain what time period this deficit figure covered.

Furthermore, the record does not support the conclusion that the trial court based its decision on Mother's testimony regarding the impact of the new home on her expenses.

Finally, Father also introduced into evidence Mother's interrogatory answers in which she said that the court should set child support based on the Family Code guidelines. But this didn't necessarily mean, as Father assumes, that Mother was agreeing she should have to pay Father child support. Under the guidelines, the trial court could have treated Father as the sole obligor, given him no offset, and required him to pay Mother significantly more than $700 per month. Thus Mother's interrogatory answer does not concede that she should have to pay Father child support.

In sum, the trial court had sufficient evidence of substantive and probative character to support its decision. Reviewing that evidence in the light most favorable to the child-support order, we conclude that the trial court did not abuse its discretion when it modified the amount of Father's child support from $1,361.86 per month to $700.00 per month.

### b.      Section 154.123(b)(4): Amount of Possession Time

Mother has expanded standard possession. The order gives her possession of Daughter roughly seven or more days a month during the school year (counting overnight Thursday visits as half days, and varying depending on how many Fridays a given month has), plus thirty days during the summer and certain holidays. *See* FAM. CODE § 153.317. We estimate that Mother has custody of Daughter between 20% and 30% of the time. This is consistent with evidence showing that Father once sent an electronic message referring to his "70%+ parenting schedule."

Father argues that there was evidence that Mother did not attend some of Daughter's school events, but this evidence did not establish a significant failure to exercise possession. He also argues that Mother did not exercise all of her possession time, but the evidence he cites shows only a failure to exercise three days of possession in June 2016. Thus, the evidence did not compel the

trial court to treat Mother as having materially less actual custody of Daughter than the possession order entitled her to.

In sum, the trial court could reasonably consider Mother's expanded possession time when determining whether requiring Father to continue paying child support was in the child's best interest.

### c.     Section 154.123(b)(17): Any Other Factor

Section 154.123(b)(17) is a catch-all provision allowing the trial court to consider any other reason to depart from the guidelines consistent with the child's best interest and taking the parents' circumstances into account.  FAM. CODE § 154.123(b)(17).

Under this provision, the trial court could have considered the evidence of the parties' history.  In March 2015, Mother was living in an apartment with her boyfriend.  In October 2015, the Denton County trial court ordered Father to begin paying Mother monthly child support of $1,360.  That same month, Mother was able to move to a larger residence.  A year later, she and her then-husband were able to buy their house, which had many amenities beneficial for Daughter.  During the same 2015–2016 time frame, Mother's employment situation improved, but her net monthly resources were still only about half of Father's.

Taking these facts into account and consulting the child-support guidelines, the trial court could see that considering each parent as an obligor and offsetting their child-support obligations would reduce Father's monthly support obligation to $800.  Giving an offset for Father's health-insurance obligation reduced it still further to $700—around half what it had been under the prior order.

### d.     Conclusion

The test for abuse of discretion is whether the trial court acted without reference to any guiding rules and principles.  As to factual matters, we must defer to the trial court if some evidence

–16–

supports the trial court's decision. As the foregoing discussion shows, the trial court could have concluded that the guiding legal principles—the child's best interest and the need for Mother to give Daughter an adequate standard of living—were best served by continuing but reducing Father's child-support obligation.

4. **Did the trial court abuse its discretion by considering "adequate resources" as a factor in its decision?**

Father argues that the Family Code doesn't allow the trial court to base its child-support decision on the goal of providing the child with "adequate resources" at both residences. He urges that this justification (i) ignores the § 154.123(b) factors and (ii) is a "fig leaf" for attempting to equalize the parents' income, which he urges is not a legitimate goal of child support.

We reject Father's argument. In the child-support context, the guiding legal principle is protecting the child's best interest, in part by helping a custodial parent give the child an adequate standard of living. Father calls Mother "the non-custodial parent" and asserts that Daughter lives with him "full-time." But these assertions are contrary to the evidence—Mother has possession of Daughter a significant part of the time and can reasonably be considered a custodial parent. Thus, the trial court could properly consider whether ordering Father to pay child support was necessary to help Mother give Daughter an adequate standard of living. The trial court's expressed goal of giving Daughter "adequate resources" at both residences is harmonious, if not synonymous, with the premise that "[t]he function of child support is to help a custodial parent maintain an adequate standard of living for the child." *Williams*, 821 S.W.2d at 145.

The nub of Father's complaint seems to be that the child-support order benefits Mother as well as Daughter, as when he argues that the legislature did not intend "to have custodial parents subsidize the lifestyles of non-custodial parents who choose to work part-time." To some extent, this is unavoidable; helping a custodial parent give a child an adequate standard of living will generally boost the parent's standard of living as well. But the Family Code addresses Father's

concern by including provisions regarding intentional unemployment and underemployment. *See* FAM. CODE § 154.066. Sometimes seeming underemployment may be in the child's best interest, such as when a parent makes employment decisions in order to spend more time with the child, start a new business, pursue further education, or address health needs. *See Iliff*, 339 S.W.3d at 82. It is up to the trial court to consider the evidence and make the necessary determinations. *Id*.

Here, Mother testified that she had plans to continue improving her situation. She was planning to become a full-time teacher, and she had begun testing to become certified as a twelfth-grade teacher. She wanted to become a high-school teacher so that her work schedule would be the same as Daughter's school schedule and so they would have summers off together. The trial court could have reasonably concluded that these decisions were in Daughter's best interest.

For these reasons, we reject Father's argument that the trial court abused its discretion by basing its decision on the intent to provide adequate resources for Daughter at both parents' residences.

**D.      Issue Three: Did the trial court abuse its discretion by ordering Father to pay child support to Mother when she did not plead for such relief?**

Father's third issue argues that the trial court had no discretion to order him to pay child support because Mother did not plead for such relief in her live counter-petition to modify. We reject this argument because Father's pleading was sufficient to support the order.

The status quo when Father moved to modify was an order requiring him to pay Mother child support of about $1,360 per month. His live pleading requested that the court modify its order and establish child support according to the statutory guidelines, which Father asserted meant an order requiring Mother to pay child support to him. Instead, the trial court reduced Father's existing child-support obligation, which means the trial court's order granted relief to Father, not Mother. Thus, in the context of Father's existing child-support duty, the modification order was supported by Father's pleading and need not also have been supported by Mother's. *See Leithold*

*v. Plass*, 413 S.W.2d 698, 701 (Tex. 1967) (father's pleading for a certain custody arrangement would support a judgment for lesser relief in the form of modified visitation rights).

We overrule Father's third issue.

## IV.  DISPOSITION

We affirm the trial court's Order in Suit to Modify Parent–Child Relationship.


/Bill Whitehill/
BILL WHITEHILL
JUSTICE


180201F.P05



# Court of Appeals
# Fifth District of Texas at Dallas
## JUDGMENT

IN THE INTEREST OF A.R.W., A CHILD

No. 05-18-00201-CV

On Appeal from the 417th Judicial District Court, Collin County, Texas
Trial Court Cause No. 417-52158-2016.
Opinion delivered by Justice Whitehill.
Justices Partida-Kipness and Pedersen, III participating.

On the Court's own motion, we **WITHDRAW** our opinion and **VACATE** our judgment of August 20, 2019. This is now the judgment of the Court.

In accordance with this Court's opinion of this date, we **AFFIRM** the trial court's February 12, 2018 Order in Suit to Modify Parent-Child Relationship.

It is **ORDERED** that appellee Annette Greenslade recover her costs of this appeal from appellant Ryan West.

Judgment entered November 26, 2019.